

FILED

FEB 2 8 2020

Clerk, U S District Court
District Of Montana
Billings

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| UNITED STATES OF AMERICA, | CR 19-65-BLG-SPW |
|---|---|
| Plaintiff, | |
| vs. | ORDER DENYING IN PART AND GRANTING IN PART GOVERNMENT'S MOTION *IN LIMINE* TO EXCLUDE EXPERT TESTIMONY |
| STEPHEN PHILLIP CASHER, | |
| Defendant. | |

Pending before the Court is the Government's opposed motion *in limine* to exclude expert testimony, or in the alternative, to hold a *Daubert* hearing. (Doc. 56.) The Defendant, Stephen Phillip Casher, filed a response, (Doc. 60), and the Government filed a reply, (Doc. 68). The motion is granted in part and denied in part.

I. Background

A superseding indictment charges Casher with bank fraud (Counts I-VI), money laundering (Count VII), false entry in bank books (Counts VIII-XIII), and blackmail (Count XIV). (Doc. 27.) The bulk of the superseding indictment revolves around private loans Casher allegedly made to Larry Price. It alleges Casher made the private loans to Larry Price while simultaneously approving loans,

1

in Casher's capacity as a loan officer and market president of Rocky Mountain Bank, to entities controlled in part by Price and for which Price was a guarantor—all without disclosing the private loans to Rocky Mountain Bank. (Doc. 27.)

Casher disclosed that he would call two experts to testify on his behalf at trial: James Beaton, who served in executive roles at several Montana banks for over 40 years, and James Shires, a former president of Rocky Mountain Bank. (Doc. 44.) After the Government raised a number of perceived issues regarding the disclosures with Casher, (Doc. 57-1), Casher filed a supplemental expert disclosure, (Doc. 54). Still believing Casher's disclosure to be inadequate, the Government filed the instant motion *in limine* to exclude Casher's expert testimony.

## II. Discussion

*A. Casher's expert disclosures meet the requirements of Fed. R. Crim. P. 16(b)(1)(C) and L.R. 16.3.*

Fed. R. Crim. P. 16(b)(1)(C) requires a defendant to provide a written summary of expert testimony if the defendant requests the Government to provide the same. The defendant's written summary must "describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." *Id.* In addition, Local Criminal Rule 16.3 requires a defendant's expert disclosure to include:

(a) identification of all documents or other information reviewed by the expert;
(b) a summary of the results of any studies, examinations, or tests performed by the expert regarding the subject matter of the testimony;
(c) the expert's qualifications;
(d) a written summary of the expert's testimony describing the expert's opinions and the bases and reasons for those opinions; and
(e) a statement as to whether the expert will also testify as a lay witness.

The Advisory Committee Notes on the 1993 amendment that added subsection (b)(1)(C) to Rule 16 state, "The amendment is intended to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." Fed. R. Crim. P. 16, Notes of Advisory Committee on Rules—1993 Amendment.

A defendant's disclosure only needs to meet the minimum requirements under Rule 16(b)(1)(C). He is not required to explain the *admissibility* of the proposed expert's opinion in his disclosure. *United States v. Hite*, 769 F.3d 1154, 1169 (D.C. Cir. 2014). Notably, the disclosure requirements are not the same requirements for admitting expert testimony at trial under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993) (holding a District Court must ensure expert testimony is both reliable and relevant). A disclosure that simultaneously meets the Rule 16(b)(1)(C) requirements *and* establishes the expert testimony's admissibility would certainly be helpful for the Court (and the Government)—but it

3

is not essential under the law. A Defendant may establish admissibility by other means, for example, at a separate hearing (a *Daubert* hearing) or during the trial itself.

Nevertheless, if the Court finds a defendant's disclosure insufficient, it may order the defendant to permit further discovery or inspection, grant a continuance, prohibit the defendant from introducing the undisclosed expert testimony, or it may enter such other order as it deems just. Fed. R. Crim. P. 16(d)(2). Exclusion of the testimony is a harsh remedy, however, and is appropriate only where "the omission was willful and motivated by a desire to obtain a tactical advantage." *United States v. Finley*, 301 F.3d 1000, 1018 (9th Cir. 2002) (quoting *Taylor v. Illinois*, 484 U.S. 400, 415 (1988)).

With two exceptions (discussed later in this order), Casher's disclosures meet the requirements of Rule 16(b)(1)(C) and L.R. 16.3, including the spirit of both rules. Casher describes each expert's qualifications: Jim Beaton has worked in commercial and private banking for over 40 years, serving in numerous executive roles, (Doc. 44 at 2), and Jim Shires is a former president of Rocky Mountain Bank, (*Id.* at 4). Casher describes each expert's testimony: Jim Beaton will testify that business debt would not be included on a personal financial statement under GAAP principles, a banker assumes that a closely-held business listed on a balance sheet is valued as the

difference between the business's assets and its liabilities, net worth is immaterial when compared to collateral and income, and net worth and liquidity where loans are secured 70% loan-to-value are nearly irrelevant because obtaining deficiencies is exceedingly difficult under the law, (*Id.* at 2–3); Jim Shires will testify that business assets and debts would not be included on a personal financial statement under GAAP and FASB, a 70% loan-to-value for residential real estate is a safe level of collateralization, and seeking a deficiency when foreclosing a trust indenture is nearly impossible, (*Id.* at 3). Casher also states both experts have based their opinions on their years of experience in banking, the text of FASB and GAAP, and the indictment. (Doc. 54 at 2.) He also states the experts will base additional opinions off the Government's evidence and the application of the principles and methods already provided to that evidence. (Doc. 54 at 3–4.)

Casher has met the disclosure requirements as to the portions of the experts' testimony above. His disclosures meet the requirements of both rules. Moreover, they comport with the spirit of the rules. They provide the Government with adequate notice that Casher will utilize experts at trial. They permit the Government an opportunity to prepare for the testimony. Finally, they provide the Government with the bases and reasons for the experts' opinions. *See* Fed. R. Crim. P. 16, Notes of Advisory Committee on Rules—1993 Amendment.

Critically, they inform the Government the experts will apply the conclusions they have drawn from their years of banking experience (conclusions Casher has disclosed) to documents the Government will rely on during trial; that application will form part of the bases and reasons for the experts' opinions.[1] The Government knows which documents those will be, and it can prepare to cross-examine Casher's experts accordingly.

However, there are two issues the Court will address with respect to part of Jim Beaton's opinion. Beaton's opinion summary states, "The Price loans, being 50-70 percent 'loan to value' were very secure, evidencing an intent to fully protect the bank." (Doc. 44 at 3.) First, nothing in the indictment indicates the Price loans had a 50-70% loan-to-value ratio. The indictment also appears to be the only document Beaton has reviewed with respect to Casher's case. *See* (Docs. 54 at 2–4, 60 at 2–4). Therefore, the indictment alone cannot be the basis and reason for Beaton's opinion. Casher must provide a supplemental disclosure stating Beaton's

---

[1] Fed. R. Evid. 703 allows an expert to base his testimony on "facts or data in the case that the expert has been made aware of or personally observed." This includes facts or data presented during trial. Fed. R. Evid. 703, Advisory Committee Notes. Expert disclosures should state whether an expert will form the basis for part of his opinion by observing facts or data presented at trial: "[T]he amendment requires a summary of the bases relied upon by the expert. That should cover not only written and oral reports, tests, reports, and investigations, *but any information that might be recognized as a legitimate basis for an opinion under Federal Rule of Evidence 703*, including opinions of other experts." Fed. R. Crim. P. 16, Notes of Advisory Committee on Rules—1993 Amendment (emphasis added). Casher's disclosures do so. *See* (Doc. 54).

basis and reason for opining that the Price loans had a 50-70% loan-to-value ratio, making them "very secure."

Second, Fed. R. Evid. 704(b) prohibits experts from testifying in a criminal case about "whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense." That Casher "inten[ded] to fully protect the bank" implies he did not intend to defraud the bank. The Court will not admit such opinions about Casher's mental state.

> B. *Casher's proposed expert testimony meets the reliability requirement of Fed. R. Evid. 702 and* Daubert, *but the Court reserves a ruling on the testimony's relevance.*

Interwoven with its argument that Casher's expert disclosures are unsatisfactory is the Government's argument that Casher's proposed expert testimony fails to meet the requirements of Fed. R. Evid. 702. Rule 702 permits an expert to testify in the form of an opinion if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

District Courts serve as gatekeepers to proffered expert testimony. *Daubert*, 509 U.S. at 589. They "must ensure that any and all scientific testimony or

7

evidence admitted is not only relevant, but reliable." *Id.* Their gatekeeping obligation "applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). While *Daubert* touched on several factors courts could consider when evaluating expert testimony, *Kumho* noted,

> [T]he test of reliability is 'flexible,' and Daubert's list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination.

*Id.* at 141–42.

First, the experts' opinions are reliable. They are based on each expert's extensive experience in the commercial banking industry and guiding principles under FASB and GAAP. The Court has little trouble finding that two individuals who are former bank presidents are qualified to opine that business debt would not be scheduled on a personal financial statement, net worth in real estate loans is immaterial compared to collateral and income because obtaining deficiencies is unwieldy, and loans with 70% loan-to-value ratios are secure. The Government appears to disagree with the opinions, especially the opinion that business debt would not be scheduled on a personal financial statement. *See* (Doc. 57 at 18).

The Government is free to dispute the opinions through cross examination and evidence of its own. However, despite the Government's disagreement, the opinions are still reliable based on the experts' training and experience and the FASB and GAAP principles Casher provided.

Second, the Court will reserve a ruling on the opinions' relevance. It is too early to tell whether Casher's expert testimony will pass muster under the remainder of Rule 702 and *Daubert*. In Casher's view, the opinions represent general banking practices or policies and are relevant testimony under *United States v. Lindsey*, 850 F.3d 1009, 1018 (9th Cir. 2017). On their face, the opinions are related to the charges at issue, but at this juncture, the Court cannot say unequivocally whether the opinions "fit." *See Daubert*, 509 U.S. at 591.

The Government is concerned that Casher's experts are opining about business debt. The Government "is at a genuine loss to understand how such loans could be considered business debt and excluded from personal financial disclosure." *See* (Doc. 57 at 17). While Casher's experts are qualified to give their opinions regarding whether business debts should or should not be reflected on a personal financial statement, in order for those opinions to be admissible at trial, they must be relevant. So, it is an issue of relevance, not of reliability. Unless a fact witness testifies that the loans in question were business loans, Casher's experts' opinions

9

regarding business loans and personal financial statements are not relevant and are not admissible. For their opinions to be admissible, Casher must lay the requisite foundation at trial, and his experts must explain how they applied their principles and methods to the facts of the case. *See* Fed. R. Evid. 702.

Finally, the Court finds a *Daubert* hearing to be unnecessary. There is no question as to the experts' backgrounds and the reliability of their opinions. The only issue is whether the opinions—including the possible future application of the experts' principles and methods to the facts of the case—are relevant. Nevertheless, the opinions are rather straightforward concepts. They are not so technical or of such questionable reliability that the Court finds it necessary to hold an additional hearing to determine their admissibility. The Court will address their relevance as the need arises. Accordingly,

**IT IS HEREBY ORDERED**:

1. The Government's Motion in Limine to Exclude Expert Testimony, or, in the Alternative, Motion for a Daubert Hearing (Doc. 56) is **GRANTED IN PART** and **DENIED IN PART**.

2. Casher shall provide a supplemental expert disclosure for the portion of the Jim Beaton's opinion described herein.

3. Any expert opinion regarding Casher's mental state where it constitutes an element of the crimes charged is inadmissible under Fed. R. Evid. 704.

4. The Court **RESERVES** ruling on the relevance of Casher's expert testimony.

5. The Clerk of Court shall notify the parties of this Order.

DATED this 28th day of February, 2020.

*Susan P. Watters*
SUSAN P. WATTERS
United States District Judge