IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| UNITED STATES OF AMERICA, | CR 19-65-BLG-SPW |
|---|---|
| Plaintiff, | |
| vs. | ORDER GRANTING MOTION *IN LIMINE* ON INTENT TO CAUSE HARM |
| STEPHEN PHILLIP CASHER, | |
| Defendant. | |

The Government filed a motion *in limine* to prevent the Defendant, Stephen Casher, from admitting evidence or argument concerning his intent to cause harm or loss to Rocky Mountain Bank and any subsequent loss to the bank. (Doc. 50.) Casher filed a response (Doc. 59), and the Government filed a reply (Doc. 67). For the following reasons, the Court grants the motion.

This order primarily supplements the Court's order on Rocky Mountain Bank's lending practices, (Doc. 84), and serves to clarify the evidence Casher may introduce concerning the issue of materiality.

1

## I. Discussion

In its prior order, (Doc. 84), the Court discussed how *United States v. Lindsey*, 850 F.3d 1009 (9th Cir. 2017), prevents a defendant from admitting evidence of specific lender behavior because lender negligence, intentional disregard, and lack of reliance are not defenses to fraud. (Doc. 84 at 2–8.) In a fraud case, while evidence of actual reliance from the Government can be highly probative of whether the false statements at issue were material, evidence of *non*-reliance from the defense is misleading where it implies the Government must prove actual reliance as an additional element. (*Id.*)

For these same reasons, it is irrelevant whether, as a result of Casher's actions, Rocky Mountain Bank suffered financial loss or whether Casher intended the bank to suffer financial loss. Those issues are not probative of whether Casher intended to defraud the bank. Bank fraud requires only "an intent to deceive or cheat" in order to obtain money or property from the bank. *See* Ninth Circuit Model Jury Instruction (5.12). "Intent to harm is not required." *See United States v. Ayewoh*, 627 F.3d 914 (1st Cir. 2010). Casher may testify he did not intend to defraud the bank, but he cannot testify he did not intend to harm it.

This does not leave Casher "powerless to challenge the materiality of false statements made in connection" with the loans. *See Lindsey*, 850 F.3d at 1016.

2

Casher may disprove materiality through evidence of the lending standards generally applied in the industry. *Id.* For example, Casher argues a pawn broker would not be concerned about how a lendee actually spent cash for pawned items. (Doc. 59 at 5–6.) He is certainly free to argue that, like the pawn industry, the only material part of the loan approval process in the banking industry is the value of collateral, and net worth and liquidity are immaterial. However, he cannot argue that because the loans in this case would be repaid, he could not have intended Rocky Mountain Bank harm.[1]

The question of materiality relates to the loan approval process and whether the misrepresentations were "capable of influencing" Rocky Mountain Bank's decisions, not the outcome of approving the loans. *Lindsey*, 850 F.3d at 1011. Casher may argue liquidity and net worth would be immaterial in the banking industry with respect to the loans at issue. He may also testify he believed the loans contained good terms and he "had an honest, good faith belief in the truth of the specific misrepresentations alleged in the indictment." *See United States v.*

---

[1] Casher disputes whether Rocky Mountain Bank truly "parted with money" when it approved a loan to Price, (Doc. 57 at 4–5), but common sense dictates that when a bank loans money, it expects to be paid back in full with interest. Getting into the weeds about the difference between "[giving] up a bunch of money" and approving a fully-secured loan would serve only to confuse the jury. Casher is free to argue liquidity and net worth were immaterial during the loan approval process, but he cannot argue he did not defraud the bank because the loans were secured and the bank did not ultimately lose money.

*Molinaro*, 11 F.3d 853, 863 (9th Cir. 1993). However, he may not argue that the misrepresentations were immaterial because the loans were "structured in a way that the bank's exposure was minimal or nonexistent." *See* (Doc. 57 at 5). Once again, that argument would imply the Government must prove the bank suffered harm—and it does not.

Furthermore, the Government's witnesses may testify that they did rely on the allegedly false statements in the loan documents and would not have approved the loans had they known of the misrepresentations. If the Government's witnesses do so, Casher may submit evidence that the lenders *did not* rely on the false statements and that the information was not capable of influencing their decision making. *See* (Doc. 84 at 6 n. 1). However, he could only submit such evidence for this limited purpose. He could not then submit evidence of *other* bad loans the bank approved. *Lindsey*, 850 F.3d at 1017–18.

## II. Conclusion

In summary, Casher may introduce evidence of industry standards to show the alleged misrepresentations were immaterial. He may also testify about his intent with respect to the charges and that he believed the loans were on good terms. However, he cannot introduce evidence of Rocky Mountain Bank's negligence in approving the loans, his intent to cause harm or loss to Rocky Mountain Bank, and

whether Rocky Mountain Bank in fact suffered a loss. If the Government introduces evidence that Rocky Mountain Bank relied on the misrepresentations and would not have approved the loans had it known about them, Casher may submit evidence to the contrary (but only for this limited purpose).

In other words, the Court will prevent Casher from testifying or arguing "that the question of materiality is anything other than whether the false statements and omissions had the objective capacity to influence the bank's decisions." *See* (Doc. 67 at 3). Understandably, this line between admissible and inadmissible evidence may be subtle, but it is an issue the Court will be cognizant of during trial.

Accordingly,

**IT IS HEREBY ORDERED** that the Government's motion *in limine* (Doc. 50) is **GRANTED**. The Clerk of Court shall notify the parties of this Order.

DATED this 28th day of May, 2020.

/s/ Susan P. Watters
SUSAN P. WATTERS
United States District Judge